## ZOILA BUZO
*v.*
## SAN JUAN LIGHT & TRANSIT COMPANY ET AL.

San Juan, Law, No. 612.

1. Neither under §§ 1803 and 1804 of the Civil Code of 1902, or under §§ 60 and 61 of the Code of Civil Procedure of 1904, can an outside collateral relative or heir, even when such persons are permitted to sue,

recover damages in a civil suit for negligent injury causing death, save for actual pecuniary loss, which must be alleged and proved.

2. When a guardian sues under § 60 of the Code of Civil Procedure of 1904 of Porto Rico, recovery can be had only for the pecuniary loss sustained by such guardian, or the pecuniary loss sustained by the estate of the ward.

3. In Porto Rico, as well as in most of the states of the Union, and also in every common and Civil-Law country, statutes or codes enabling nondependent collateral relatives or heirs to sue for negligent injuries causing death appear, in most instances, to be intended as compensatory only; and such statutes or codes, as a general rule, exhibit no intention to permit exemplary damages to be recovered, or damages in the nature of punishment for a possible crime involved in the negligence. These matters are for the state, and not for private prosecutors.

4. But the rule permitting recovery by nondependent collateral relatives, heirs, or personal representatives of only compensatory damages for negligent injuries resulting in death cannot be strictly applied in cases where the suit is by the surviving husband, or wife and children, or either or both, or by other direct ascending or descending heirs or relatives. In such cases the measure of damages may be quite different, and the loss of the society as well as the kindly demeanor of the deceased toward the person suing, and other considerations, may enter into the equation.

Opinion filed June 18, 1909.

------

*Messrs. Artemio P. Rodriguez* and *Willis Sweet,* attorneys for plaintiff.

*Mr. F. H. Hord,* attorney for the defendant San Juan Light & Transit Company.

*Mr. Francis H. Dexter,* attorney for the defendant American Railroad Company of Porto Rico.

RODEY, Judge, delivered the following opinion:

This is a civil action for damages, for injuries resulting in the death of a boy. It is before us on the issue raised by the demurrer of each of the defendants to the complaint. The case is a peculiar one and the ruling in it will be very important.

The first-named defendant, the San Juan Light & Transit Company, insists, first, that no right of action exists in favor of this particular plaintiff, and that the facts as stated in any event do not constitute a cause of action. The other defendant, the American Railroad Company of Porto Rico, also insists that there is no right of action in favor of the plaintiff, and that, in any event, no cause of action has been stated as against it, and that, if there is any liability, it is against the other defendant, whose negligence, as it alleges, as shown by the complaint, was the proximate cause of the injury.

We gather from the complaint that plaintiff, Zoila Buzo, is the aunt of the deceased, Antonio Buzo, and that she has recently been adjudged by a proper court of the island to be his heir. The complaint further sets out that deceased, at the time of his death, was sixteen years of age. He was killed on March 1, 1908. It appears that he was one of the numerous boys who carry satchels for passengers to and from the railroad trains at San Juan, Porto Rico, and was returning on one of those trips from the railroad station to the main portion of the city when the accident occurred. He boarded a street car of the defendant the San Juan Light & Transit Company, to make the journey, but it was so crowded that he could barely get on the rear platform of the car. At the time and place in question, the other defendant's steam railroad track ran parallel and

Buzo v. San Juan Light & T. Co.

quite close to the street car track. It is further alleged that through the negligence of the street car company, its car was started with a jerk, and threw the boy off, and that, at that same instant, a train on the steam railroad was coming at high speed in the same direction, and the boy, being thrown against it, was knocked back under the street car, where he was run over and killed. At the time of the argument, it was contended that this could occur even though the boy was thrown from the rear platform of the street car, because, it was said, the railroad train threw him forward of the rear trucks of the street car. Deceased had not yet paid any fare for his passage on the street car, but no point is made as to this, as he probably intended to pay his fare.

At the outset it must be borne in mind that this is not a case of the relatives of a deceased employee suing the master or employer. In that sort of a case the local employers' liability act, Porto Rico Rev. Stat. 1902, pp. 150 et seq., and the national employers' liability act of April 22, 1908, clearly create the right and specify who is entitled to sue.

In the view we take of the case it would not be profitable to determine whether both or only one of the defendants are or is liable for this death. The grave question to be determined is: Can a mere collateral relative, even though such person is an heir or the sole heir of a deceased, maintain such an action in Porto Rico, when such collateral relation presumably has sustained no pecuniary loss, and when such deceased is, in law, under no obligation to support or maintain such plaintiff?

No one now disputes the proposition that, at the common law, a personal action died with the person, and that no civil action would lie for an injury causing death. Mobile L. Ins. Co. v.

Brame, 95 U. S. 756, 24 L. ed. 582, and cases cited.   It is not
easy to ascertain what the rule in this regard was or is in the
Civil Law, or whether in fact it was or is the same under the
Code Napoleon as under the Codes of Spain and other Civil-
Law countries, or whether the right existed at all in ancient
Roman law; at least, as to an action for the death of a free
person.   It is, however stated in Hubgh v. New Orleans & C.
R. Co. 6 La. Ann. 495, 54 Am. Dec. 565, where the subject
received elaborate consideration both from counsel and the
court, that, under the Code Napoleon, the right was held to
exist, but in that case, both originally and on the rehearing
(printed together) the supreme court of Louisiana refused to
follow the holding of the French courts, although the section
of the Louisiana Code under consideration was copied from
the Code of that country.   Mobile L. Ins. Co. v. Brame, supra.
However, the legislature of that state soon passed an act giving
the right to the action to certain relatives.

A search for authority in the Civil Law to sustain the some-
what oft-repeated assertion of American brief makers and courts
(see Holmes v. Oregon & C. R. Co. 6 Sawy. 262, 5 Fed. 75,
and the case of The Harrisburg, 119 U. S. 213, 30 L. ed. 362,
7 Sup. Ct. Rep. 140), that such an action was maintainable in
that system of jurisprudence, is bewildering, and, indeed, dis-
couraging, as the subject does not appear ever to have been
considered in a direct way at all by the courts or the commenta-
tors of that legal system.   However, the question is *stare decisis*
here, because a former incumbent of this bench held that such
an action does in fact lie, under the Civil Law, and that such
is now the law here in Porto Rico under the Codes.   See Borrero
v. Compañia Anonyma de la Electrica, 1 Porto Rico Fed.

Buzo v. San Juan Light & T. Co.

Rep. 144. We followed the rule as laid down in this Borrero Case once before (see our opinion in Espino v. Martinez, 3 Porto Rico Fed. Rep. 61). True, our predecessor cites but little Spanish authority for this proposition, in fact, only a single case, that of Celada v. Chacon, 76 Juris. Civil, 483, December 14, 1894. We have examined that case, and it is not very satisfactory as authority on the general proposition. We have also examined several other cases in those Jurisprudencia Civil reports, particularly where §§ 1902 and 1903 of the Spanish Code, which are identical with §§ 1803 and 1804 of the Civil Code of 1902 of Porto Rico are considered, and they are all quite unsatisfactory, to our way of thinking, although, in a general way, they appear to assume that the right to maintain such an action does exist. The supreme court of the Philippine Islands in Rakes v. Atlantic, G. & P. Co. 7 Philippine, 359, considers the subject, particularly as between master and servant, most elaborately; the prevailing and dissenting opinions are elaborate and painstaking expositions of that cognate subject, but the particular question here treated is not discussed in the general sense.

The doubt as to whether or not, in the general or broad sense, a civil action for an injury resulting in death would lie at the Civil Law, probably arises because of the peculiar procedure that obtained in Civil-Law countries. It seems that, under that system, no person could be sued for damages for committing a murder or other high crime save in the same proceeding as the criminal prosecution, both suits being carried on together, unless those entitled to bring the civil suit specifically reserved, at the time of the criminal prosecution, the right thereafter to bring the civil suit alone. The civil suit could never go to judg-

ment until after the conviction of the defendant in the criminal proceeding, and abated if he was acquitted. See Espino v. Martinez, supra, and citations, and the Rakes Case, supra. In the latter case and also in several cases we have examined in the Jurisprudencia Civil reports, it seems to be admitted that, under the Spanish Code, there was a class of cases where culpa or negligence intervened, which did not amount to public crimes in law, and yet for which a civil action would lie. It appears also to be asserted that one class of cases belonged under the Penal Codes, and the other under §§ 1902 and 1903 of the Civil Code, which latter sections were, it seems, not considered as necessarily applying to cases involving public crimes. See vol. 76 Juris. Civil p. 483, December 14, 1894; Id. vol. 93, p. 70, January 15th, and p. 397, March 7, 1902.

However, as counsel for both parties here appear to admit that the right generally to bring such an action exists in Porto Rico, it is not profitable to discuss that phase of the subject further. Plaintiff, though, insists that the right of action here is based upon §§ 1803 and 1804 of the Civil Code, which, as stated, are identical with §§ 1902 and 1903 of the Spanish Code. Our § 1803 reads as follows: "A person who, by an act or omission, causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done." And subsection 3 of § 1804 reads: "Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties."

The defendants claim that no such right, at least, in favor of this sort of a plaintiff, exists under those sections of the Code of Civil Procedure of 1902, but that, if the right exists at all,

which is denied, in the case of this sort of a plaintiff, it must be under §§ 60 or 61 of the modern American Code of Civil Procedure of Porto Rico of 1904, which read:

"Section 60. A father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another. Such action may be maintained against the person causing the injury or death, or, if such person be employed by another person who is responsible for his conduct, also against such other person.

"Section 61. When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as, under all the circumstances of the case, be just."

We have made a rather extensive, even though quite hasty, examination of the authorities available, and are firmly of the opinion that, under the Spanish system as well as under our own modern American Codes, unless in some few states where the wording of the Codes shows the contrary, the central and dominating idea of tolerating or legislating in favor of the right of outside third persons to recover civil damages for an injury resulting in death was for the purpose of compensating those suffering an actual pecuniary loss because of the death, and which damages, when such parties sue, must be alleged and proved by them. This rule cannot, of course, be applied with

strictness where it is the surviving husband, or wife and minor children, or either or both, that bring the action. The measure of damages is quite different in such case. To permit a suit to be brought by nondependent adult children, or by mere collateral outsiders, *just to enhance the estate of the deceased,* or as a punishment of the defendant guilty of the negligence causing the death, does not appear to have been the intention of the law under either system of jurisprudence.

In the Juris. Civil Reps. of the Supreme Court of Spain, it is found that the suit, when permitted, was always by the surviving husband or wife, or by immediately direct ascending or descending heirs; never by collaterals. For instance, in the Celada Case, 76 Juris. Civil, 483, supra, the suit was by the mother, as it was also by the mother in the Melero Case, 93 Juris. Civil, 70; and it was by the widow and children in the Martinez Case, reported in the latter volume at page 391.

As stated, we do not find it to be the law, under either system, that the courts or the statutes permitted mere outsiders or collateral heirs to recover damages in a civil suit for negligence resulting in a death, certainly not without showing some special damage. On the contrary, the law seems to be that such recovery was only permitted in favor of persons directly injured, or those whom the deceased was bound in law to support, or who were dependent upon him.

We therefore conclude that it makes no difference in this particular case, whether the cause of action is under the substantive law or the Civil Code of 1902, or under the modern American Code of Civil Procedure of 1904; because, in either case, without an allegation and showing of special damage, a mere collateral relation such as an aunt, which this plaintiff is,

Buzo v. San Juan Light & T. Co.

even though she has been declared to be the heir of the deceased, is not, under the law, permitted to recover, or, if she could recover, the damage could only be nominal, and we think the court would be bound to so instruct the jury.

It will be noticed that § 60 of the Code of Civil Procedure of 1904, supra, provides that "the father, or, in case of his death or desertion of his family, the mother, may maintain an action for the death or injury of *a minor child,* and a guardian for the death or injury of his ward, etc." This surely does not give any right to the aunt of this deceased boy. It is not even alleged in the complaint that she is the guardian, but it is affirmatively stated that she is simply the heir of the deceased.

Section 61 provides "that when the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action, etc." It will be seen that this section does not apply at all in the case at bar, because the deceased was a minor, and only the father or mother could recover in such case. The action under that section does not appear to survive to anyone else save a guardian. This would dispose of the case under the Code of Civil Procedure of 1904, and we might let it rest at that; but, following the proposition that only those who have been injured pecuniarily are entitled to recover, we find:

That in California, where the Code of Civil Procedure, §§ 376 and 377, is word for word like §§ 60 and 61 of local Code, it has been uniformly held, that those only who have been injured pecuniarily can recover. See Pomeroy's Annotated Codes and Statutes of California, 1901, pp. 122–124 where many cases are cited to this effect.

IV. PORTO RICO—34.

It was also held in Burk v. Arcata & M. River R. Co. 125 Cal. 364, 73 Am. St. Rep. 52, 57 Pac. 1065:

That, "in an action for a death, brought by the adult collateral heirs of the deceased, the mere fact· that they are such heirs does not tend to show pecuniary damage, and, in the absence of other proof tending to show actual damages, or at least probable loss, resulting to them from the death, the jury should be instructed that their recovery must be limited to nominal damages."

This case also held that mere speculative or conjectural possibility of benefits to the parties complaining are not a proper estimate for damages resulting from a death.

In Re California Nav. & Improv. Co. 110 Fed. 670 and 110 Fed. 678, which were also California cases, it was held that, under § 377 of the Code of Civil Procedure of that state (identical with our § 61, aforesaid), "damages are recoverable only where the heirs of the deceased are shown to have sustained pecuniary loss by reason of his death."

In Gaither v. Kansas City, etc., R. Co. 27 Fed. 544, it is held that only the pecuniary interest of the plaintiff can be recovered for, and that this may be even less than $250 when the sentiment is discarded that any man's life is worth more than such a pittance, because the law does not .at all recognize as an element of damages such fact (as to such plaintiffs) nor does it recognize any idea of punishment for the negligence.   This seems to show that the matter of punishment is for the state, in a proper criminal prosecution, and not for the heirs or rela-- tives, in a civil action.

As before intimated, we, of course, admit that pecuniary injury is not the sole measure of damages if the suit is by the

Buzo v. San Juan Light & T. Co.

surviving immediate relative. In such a case the social and domestic relations of the parties and their kindly demeanor towards each other and their society may enter into the measure of damages. This was held in Beeson v. Green Mountain Gold Min. Co. 57 Cal. 20

The supreme court of the state of Nebraska construed their damage act to mean that a suit under it could only be maintained for the pecuniary loss sustained by the next of kin of the deceased, for whose benefit the recovery is permitted; and that general damages were recoverable only where such next of kin are persons who were dependent upon the deceased for their maintenance, or to whom he was under legal obligation to furnish such maintenance; and that, in other cases, there could be no recovery unless special damages were alleged and proved. See Thompson v. Chicago M. & St. P. R. Co. 104 Fed. 845.

In the case of Louisville, N. A. & C. R. Co. v. Goodykoontz, 119 Ind. 111, 12 Am. St. Rep. 371, 21 N. E. 472, the supreme court of Indiana held that, under the statute of that state, which does not vary much from § 60 of the Porto Rican Code, when the action was by the guardian it could be only to reimburse the personal estate of the ward for any actual loss.

The supreme court of Colorado in Hindry v. Holt, 24 Colo. 464, 39 L.R.A. 351, 65 Am. St. Rep. 235, 51 Pac. 1002, held that, under the act of that state for the recovery of damages for death by wrongful act, which provided that, if the surviving husband or wife failed to sue, the heirs might do so, meant the child or children,—that is, the lineal descendants of the deceased,—and by implication excluded collateral heirs.

We therefore unhesitatingly conclude that, under the law of Porto Rico, an aunt, as such, even though she is declared to be

the heir of a deceased minor, has no right in Porto Rico to sue for damages for a wrongful act resulting in such minor's death; and therefore, unless, within five days, the complaint is amended (if it can be) so as to show a right in plaintiff to bring the suit, it will stand dismissed at the cost of plaintiff, without further action on the part of the court, and an order to that effect will be entered.