**STATE of Maryland, for the use of Hassie C. SMITH, surviving widow of William J. Smith, deceased, Plaintiff**

v.

**A/S NABELLA, Defendant and Third-party plaintiff (Nacirema Operating Co., Inc., Third-party defendant).**

**Hassie C. SMITH, Administratrix of the estate of William J. Smith, deceased, Plaintiff**

v.

**A/S NABELLA, Defendant and Third-party plaintiff (Nacirema Operating Co., Inc., Third-party defendant).**

Civ. No. 10856.

United States District Court
D. Maryland.
Oct. 1, 1959.

Jerome B. Monfred, Baltimore, Md., for plaintiff.

Southgate L. Morison and David Ross, Baltimore, Md., for defendant, and third-party plaintiff.

Jesse Slingluff and Mathias J. DeVito, Baltimore, Md., for third-party defendant.

THOMSEN, Chief Judge.

This is a civil action brought by (1) State of Maryland, for the use of Hassie C. Smith, surviving widow of William J. Smith, deceased, and (2) Hassie C. Smith, Administratrix of the Estate of William J. Smith, deceased, against A/S Nabella, alleging that the decedent, a longshoreman, was killed as a result of (a) the unseaworthiness of a vessel owned by defendant on which the decedent was working in Baltimore Harbor, and (b) the negligence of defendant, its agents, servants and employees. The action is brought (1) on behalf of the surviving widow under the Maryland Wrongful Death Act (Lord Campbell's Act), Art. 67, Ann.Code of Md., 1957 ed., and (2) on behalf of the administratrix under the Maryland Survival Statute, Art. 93, sec. 112 of the Code. Jurisdiction is based on diversity of citizenship. Defendant has filed a third-party complaint for indemnity against Nacirema, the stevedoring company which employed the deceased.

The case is now before the court on defendant's motion to strike the allegations of unseaworthiness from that portion of the complaint which alleges a claim under the Wrongful Death Act.[1] The motion is based on the contention "that the Maryland Wrongful Death Act does not provide for recovery for non-negligent unseaworthiness". The right of the administratrix to recover on the ground of "non-negligent unseaworthiness" under the Maryland Survival Statute has not been questioned, and defendants concede "that recovery may be had under the Maryland Wrongful Death Act for negligently (as determined by the Maryland substantive law standards) caused death".

A similar question was presented to this court in State of Maryland, to Use of Gladden v. Weyerhaeuser Steamship Co., D.C.D.Md., 176 F.Supp. 664, and this court held that the alleged failure of the shipowner to provide a seaworthy ship, with appurtenant appliances and equipment, was a "wrongful act, neglect or default" within the meaning of the Maryland Wrongful Death Act (hereinafter called the Maryland statute).

The opinion in Gladden recognized that the question at issue involved the proper construction of a Maryland statute, controlled by Maryland law. The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524; United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed. 2d 541. The opinion noted that there is no Maryland case directly in point[2]; that

---

1. Art. 67, sec. 1, provides: *"Liability notwithstanding death.* Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the vessel or person who would have been liable if death had not ensued, or the executor or administrator of the said person who would have been liable in case of the death of the said person who would have been liable, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony and if death ensues as a result of wrongful act, neglect or default of a vessel, suit may be brought in rem against said vessel in any court of competent jurisdiction; provided, however, that any such action against the executor or administrator of the said person who would have been liable shall be commenced within six calendar months after the date of the qualification of the executor or administrator of the said person who would have been liable."

2. Defendant argues that in State, to Use of Alston v. Baltimore Fidelity Warehouse Co., 176 Md. 341, 4 A.2d 739, the Maryland Court applied Maryland standards of liability rather than maritime

the history of the Maryland law had been reviewed by Judge Chesnut in State, to Use of Maines v. A/S Nye Kristianborg, D.C.D.Md., 84 F.Supp. 775; that the propriety of such a suit seems to have been assumed by counsel for the defendant, by Judge Chesnut, and by the Fourth Circuit in State of Maryland for Use of Johnson v. United States, 165 F.2d 911, and that the majority and dissenting opinions of the Third Circuit in Skovgaard, 252 F.2d 14, argue fully the reasons for an affirmative and a negative answer, respectively, to the question at issue. Skovgaard, of course, dealt with the New Jersey law, and the opinion in Gladden discussed the similarities and differences between the New Jersey statute and cases and the Maryland statute and cases. That discussion will not be repeated here, but it is adopted by reference.[3] The decision in Gladden is supported by the reasoning of the Fourth Circuit in Holley v. S.S. Manfred Stansfield, 269 F.2d 317, decided July 9, 1959.

The complaint in Gladden alleged that the injury and death in that case were caused by the unseaworthy condition of the starboard runner and port boom, both of which were part of the vessel's own equipment and gear. In the instant case the unseaworthiness is alleged to have resulted from a defective and worn rope attached to a sling which had been brought aboard by the stevedoring contractor as part of its gear. The difference is immaterial, because: (1) both in Gladden and in the case at bar the motion to dismiss was based on the assumption that the unseaworthiness was not coupled with any negligence on the part of the shipowner; and (2) the duty owed by a shipowner to a longshoreman to provide a seaworthy vessel, with appurtenant appliances and equipment, first stated in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, was extended in Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, to cover tackle and gear brought aboard the ship by the stevedoring contractor and used by it in loading or unloading the cargo.

The breach of that duty owed by the shipowner to the longshoreman is a neglect or default on the part of the shipowner which entitles an injured longshoreman to sue the shipowner for damages. In the instant case, if plaintiff's decedent had survived, he could without question have sued the defendant shipowner and recovered damages for injuries due to the alleged failure of the shipowner to provide a seaworthy vessel, tackle and gear.

The question is, does the Maryland statute give a right of action to the longshoreman's widow if he dies as a result of such injuries.

standards of liability in a death action arising out of a maritime tort. That was an attractive nuisance case, in which a child went upon the defendant's property, boarded a raft which was moored to its dock, and was drowned. There was no suggestion in the opinion or in the briefs that a maritime tort was involved, or that the decision would have been different if maritime rather than Maryland standards of liability had been enforced.

3. Defendant has filed an affidavit by the proponent of the 1949 amendment to Art. 67, sec. 1, stating that the purpose of the amendment was "to overcome the admiralty rule that the owner of a vessel is not responsible for the wrongful act or negligence of a compulsory pilot and to give a cause of action in rem against a vessel in a case of personal injuries causing death". This Court did not suggest anything to the contrary in Gladden. That opinion did not hold that the 1949 amendment was intended to give a cause of action for unseaworthiness where none existed before; but did show that the Legislature, shortly after Sieracki, had considered and amended Art. 67, sec. 1, and made no effort to eliminate a right of action based upon the neglect or default of a shipowner to provide a seaworthy ship; rather, they extended the act to impose liability on the ship, and therefore indirectly on her owners, for certain wrongful acts, neglects or defaults, irrespective of fault on the part of the owners. This showed that the Maryland Legislature had no repugnance to incorporating principles of maritime law in the Maryland Wrongful Death Act.

If the instant case had been presented to the Maryland Court before the decisions in Sieracki and Petterson, that Court would probably have denied recovery on the ground that the party injured could *not* have maintained an action if he had lived. I do not believe that the Maryland Court would have decided Sieracki and Petterson as they were decided by the Supreme Court or would have anticipated those decisions. But if the instant case were presented to the Maryland Court today, it would have to proceed on the premise that the party injured *could* have maintained an action if he had lived.

The Maryland Court would be faced with a problem analogous to that faced by the courts in Skovgaard and Halecki and would wish to avoid "capricious and irrational distinctions". Halecki v. United N. Y. and N. J. Sandy Hook Pilots Ass'n, 2 Cir., 251 F.2d 708, 713, quoted by the Fourth Circuit in Holley, 269 F.2d at page 321. The majority opinions of the Third Circuit in Skovgaard and of the Second Circuit in Halecki look one way, the opinions in Graham v. A. Lusi, Ltd., 5 Cir., 206 F.2d 223, and Lee v. Pure Oil, 6 Cir., 218 F.2d 711, look the other way. The recent opinion of the Fourth Circuit in Holley, although not directly in point, must be thrown into the balance on the side of Skovgaard and Halecki.

I believe that the Maryland Court would hold that the Maryland statute is not limited to the wrongful acts, neglects and defaults with which the legislators who adopted it were familiar, but that the statute was intended to apply to all wrongful acts, neglects and defaults which from time to time would entitle the party injured to maintain an action. The unseaworthiness alleged in the case at bar is such a neglect or default on the part of the shipowner, because of the onerous duty which has been placed on it by Sieracki and Petterson. I conclude that the Court of Appeals of Maryland would hold, however reluctantly, that the alleged failure of the defendant to provide a seaworthy ship, with appurte-

nant appliances and equipment, was a "wrongful act, neglect or default" within the meaning of the Maryland statute.

Defendant's motion to strike is denied.